IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCUS GENERAL AGEE, )
)
    Plaintiff, )
)
v. ) CASE NO. 2:17-cv-358-SRW
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
    Defendant. )

## OPINION

Plaintiff Marcus General Agee protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on October 2, 2104, alleging an onset date of February 1, 2014. (R. 150-61). After Agee's applications were denied, an Administrative Law Judge ("ALJ") held a hearing on December 9, 2015 (R. 37-71) and issued an unfavorable decision on January 25, 2016. (R. 23-33). Plaintiff requested review of the ALJ's decision. (R. 226-228). When the Appeals Council rejected review (R. 1-6), the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **REVERSES AND REMANDS** the Commissioner's decision denying supplemental security income and disability benefits.

### I. STANDARD OF REVIEW

Agee seeks judicial review of the Commissioner of Social Security Administration's decision denying his application for disability insurance benefits and supplemental security income benefits. United States district courts may conduct limited review of such decisions to determine

whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. In reviewing a social security case, the court will use the substantial evidence standard to affirm the Commissioner's decision if substantial evidence exists to support the decision. *Mitchell v. Commissioner,* 771 F.3d 780, 781 (11th Cir. 2014) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The court is limited in its review; therefore, the court is "preclude[d] [from] deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1986)). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*); *Moreno v. Astrue,* 366 Fed. Appx. 23, 26-27 (11th Cir. 2010) ("failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html.

assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when that person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner uses a five-step, burden-shifting analysis to determine when claimants are disabled.  20 C.F.R. §§ 404.1520;[3] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456 (11th Cir. June 10, 2015).  The ALJ determines:

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html.

[3] For the purposes of this appeal, the Court uses the version effective until March 27, 2017, as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

> (1) Whether the claimant is currently engaged in substantial gainful activity;
>
> (2) Whether the claimant has a severe impairment or combination of impairments;
>
> (3) Whether the impairment meets or exceeds one of the impairments in the listings;[4]
>
> (4) Whether the claimant can perform past relevant work; and
>
> (5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of a qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the

---

[4] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

### III. BACKGROUND AND PROCEEDINGS

On January 25, 2016, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. (R.23-33). The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2019. (R. 28). The ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2014, the alleged disability onset date. (R. 28). The ALJ determined that Plaintiff had the following severe impairments: left eye blindness and right eye trauma and cataract with decreased visual acuity. (R. 28). The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

impairments listed in the regulations for presumptive disability. (R.28-29). The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following additional nonexertional limitations:

> [claimant can] occasionally climb ramps and stairs and never climb ladders or scaffolds; restricted from hazards such as heights or machinery but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; avoid working with very small objects such as beads or threads and tasks requiring good depth perception; never operate a motor vehicle for commercial purposes; and occasionally read newspaper size print. Additionally, he is limited to simple routine, repetitive tasks.

(R. 29-31). The ALJ then found, based Plaintiff's age, education, work experience, RFC and the VE's testimony, that Plaintiff could perform other work that exists in significant numbers in the national economy, such as folder, hand finisher and dining room attendant. (R. 32-33). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 33). Plaintiff appealed the ALJ's decision to the Appeals Council and his request for review was denied. (Tr. 1-6). Thus, Plaintiff exhausted all his administrative remedies and now appeals the Commissioner's final decision.

### IV. STATEMENT OF FACTS

Plaintiff is 34 years old, right-hand dominant, and has completed the twelfth grade. (R. 41, 44). Agee testified at the hearing before the ALJ that he attempted to go to college, but he was unable to see well enough to read books or read the board, so he did not continue. (R. 44). He has a driver's license, but due to his vision, he limits his driving to only a dirt road near his house. (R. 42, 43). He does not drive on the highway because he has had some near accidents with people and construction and limits his driving to visit family less than one mile away. (R. 43, 54). Also, Agee has two young children but does not take them out in public because he would be unable to

see them if they ran off. (R. 55). It is hard for Agee to recognize people until he is "dead up to their faces." (R. 55).

Agee further testified that he was born with coloboma in his left eye and has been completely blind in that eye since birth. (R. 52). In 2001, when Agee was riding as a passenger in a truck, someone threw a brick through the car window that hit Agee in the right eye. (R. 53). He now has scarring in his retina and cataracts in his right eye. (R. 53). He is hesitant to have surgery on his right eye because of the possibility of losing all eyesight if something goes wrong. (R. 53).

Plaintiff performed work in the past with Boatright Railroad Products; his job description was "pulling wood off the chain." (R. 45). He worked with Alabama Staff Incorporated as a parts assembler and inspector. (R. 45-47). Agee also worked as a hoist operator and a machine operator at a paper mill. (R. 48). Additionally, he worked briefly as a tree cutter with Asplundh but was unable to see well enough to carry out the job duties. (R. 49).

Agee's job as a machine operator at the paper mill was his last job prior to his alleged onset date. (R. 48). As a machine operator, Agee would have to press the emergency stop button to clean the jam out of the machine if there were a jam in the paper machine. (R. 48). His supervisors did not want the machines stopped because the company would lose production time. (R. 48). Agee could not see well enough to remove the jam while the machine was still running. (R. 48-50). He was terminated for slowing down the production line. (R. 50).

Agee has had with past employment due to his poor vision. He testified that when he drove a forklift, he caused pallets to tumble off the forklift. (R. 58). He also jammed the forklift into the paper he was hauling. He was removed from those duties. (R. 58). He tried to work as a tree

trimmer on power lines prior to the incident with his right eye but still had trouble performing that job. (R. 58-59).

Plaintiff testified that he is unable to read unless he takes off his glasses and uses a magnifying glass for his right eye. (R. 54-55). He said that he reads very slowly. (R. 61). He lives with his parents and his sister and they read for him most of the time. (R. 55-56). He can make a sandwich or cold cereal but otherwise prepares no food. (R. 62). His other activities include playing with his dogs, walking around the neighborhood, listening to music and doing pushups in his back yard. (R. 63). He is unable to watch television because it gives him headaches. (R. 63).

## VI. ISSUES

Agee raises three issues on appeal:

A.  Whether the Appeals Council erred by refusing to consider the new evidence submitted by Plaintiff.

B.  Whether the ALJ failed to develop the record fully and fairly.

C.  Whether the ALJ erred at Step-5 of the sequential evaluation of disability.

*See* Doc. 13 at pp. 5-6.

## VII. DISCUSSION AND ANALYSIS

**A. Whether the Appeals Council erred by refusing to consider the new evidence submitted by Plaintiff**

Following an adverse decision by the ALJ, Plaintiff submitted to the Appeals Counsel a letter from board certified opthamologist, Sarah J. Hays, MD, stating her opinion that Agee is "legally blind." (R. 18). Specifically, Dr. Hays concluded that "Mr. Agee's right eye has a limitation in his field of vision so that the widest diameter subtends an angle no greater than 20

degrees." (R. 18). On the basis of this letter, Plaintiff argues that this matter is due to be reversed and remanded.

To meet the criteria for remand under sentence six of 42 U.S.C § 405(g), plaintiff must establish that (1) the evidence is new and noncumulative, (2) the evidence is material such that a reasonable probability exists that it would change the administrative result, and (3) there was good cause for the failure to submit the evidence at the administrative level. *See Falge v. Apfel*, 150 F. 3d 1320, 1323 (11th Cir. 1998). The Commissioner concedes that the evidence is new and noncumulative, but argues that Agee failed to show the additional evidence is material in that it could reasonably have been expected to change the ALJ's decision. For the reasons explained below, the Court concludes that this evidence is material because it addresses a part of the definition of legal blindness which was omitted by the ALJ. Further, the Court concludes that Plaintiff has demonstrated good cause for his failure to submit the evidence at the administrative level based on his request to the ALJ that a medical expert be made available to testify at the December 9, 2015 hearing. (R. 17).

Since the ALJ did not have the benefit of this evidence in making her decision, and it is not clear to the Court how this opinion of a non-examining, consulting physician will impact the ALJ's ultimate conclusion that Plaintiff is not disabled, the Court declines to award benefits. Rather, the Court concludes that this matter is due to be remanded to the Commissioner for consideration of the new evidence.

**B. Whether the ALJ failed to fully and fairly develop the record**

Plaintiff also argues that the ALJ failed to fully and fairly develop the record because no medical expert testified at the administrative hearing and the ALJ failed to order a consultative exam. However, an ALJ "is not required to order a consultative examination as long as the record

contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec.,* 496 F. 3d 1253, 1269 (11th Cir. 2007). To determine whether remand is warranted, "the court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Graham v. Apfel,* 129 F. 3d 1420, 1423 (11th Cir. l997).

> The ALJ summarized the record evidence pertaining to Plaintiff's vision as follows:
>
> Callahan Eye Hospital records dated June 13, 2012, reveal the claimant was referred by Anderson Eye Care. The claimant complained of glare and decreased driving at night. Visual acuity on the left was light perception and on the right was 20/50-2. Diagnoses included history of trauma of the right eye, and bilateral cataracts. (Exhibit 1F).
>
> K. Michael Anderson, O.D. Anderson Eye Care, provided records dated May 14, 2014. The claimant's vision on the right was 20/70 and no vision on the left. He also had a cataract on the right (Exhibit 2F).
>
> Callahan Eye Hospital records dated January 8, 2015, reveal uncorrected visual acuity on the right of 20/70+1 and light perception on the left since infancy. He also had a cataract on the right but was not ready for surgery. The claimant returned on August 12, 2015, and uncorrected visual acuity on the right was 20/80, and pinhole was 20/50 (Exhibit 6F).
>
> The claimant's records reveal he has been blind in his left eye since infancy and suffered a trauma to this right eye in 2001 resulting in decreased vision in it. The claimant continued working until losing his last job in 2014 despite the trauma to his right eye 13 years earlier. His last records demonstrate visual acuity on the right of 20/80, and pinhole vision of 20/50 on the right. (Exhibit 6F). The claimant's decreased visual acuity does not meet or equal a listing in the social security regulations … .

(R. 30-31). Plaintiff argues that, contrary to the findings of the ALJ, he meets the definition of statutory blindness and is disabled on this basis. The definition of statutory blindness is as follows:

> Statutory blindness is defined in the law as central visual acuity of 20/200 or less in the better eye with the use of correcting lens. An eye which has a limitation in the field of vision so that the widest diameter of the visual field subtends an angle

> no greater than 20 degrees *is considered* to have a central visual acuity of 20/200 or less.

20 C.F.R. § 404.1581 (1995). (Emphasis added). The ALJ does not cite to this code section in her opinion, and the Commissioner fails to address its application in its brief.

Instead, the ALJ pointed to medical evidence confirming that Plaintiff did not have visual acuity of 20/200 or less. (R. 30-31). She further found Plaintiff did not meet "Listing 2.02 … Criteria of this listing is 20/200 visual acuity or less in the better eye after best correction." (R. 29). However, the ALJ did not address whether the medical evidence demonstrates that Plaintiff "is considered" to have visual acuity of 20/200 or less because "the widest diameter of the visual field subtends an angle no greater than 20 degrees." 20 C.F.R. § 404.1581. Further, the ALJ failed to address Section 2.03, which contains language similar to 20 C.F.R. § 404.1581, and thus did not address the relationship between Sections 2.02 and 2.03. *See Teigen v. Comm'r of Soc. Sec.,* 667 Fed. App'x. 519, 523 (11th Cir. 2017). Specifically, Section 2.03 provides

> "that a claimant can establish contraction of the visual filed in the better eye by showing that (1) the 'widest diameter subtending an angle around the point of fixation no greater than 20 degrees' (2) an 'MD [mean deviation] of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual filed', or (3) a 'visual filed efficiency of 20 percent or less, determined by kinetic perimeter.'"

*Id.* citing Pt. 404, Subpt. P. App. 1 § 2.03. The Court concludes that the ALJ's failure to address Plaintiff's visual acuity as required by 20 C.F.R. § 404.1581 and Section 2.03 is error.

Moreover, Plaintiff's new evidence pertains to the analysis of visual acuity required by these sections. Specifically, the new evidence contains an opinion by a board certified opthalmologist that Plaintiff's "right eye has a limitation in his field of vision so that the widest diameter subtends an angle no greater than 20 degrees." (R. 18). It is not clear upon what record evidence this opinion is based. Nor is it clear that the current record contains evaluations of

Plaintiff's vision which could support this finding. Accordingly, the Court concludes that prejudicial evidentiary gaps are present such that remand is necessary for further development of the record as to whether Plaintiff meets the definition of statutory blindness under 20 C.F.R. 404.1581 and Section 2.03.

## VIII. Conclusion

Because the Court concludes that the ALJ erred in failing to consider the material new evidence of whether Plaintiff meets the definition of statutory blindness, and erred in failing to develop the record fully on this issue, the Court pretermits discussion of the remaining issues. However, it is not clear to the Court at this time whether the ALJ's conclusion that Plaintiff is not disabled will be altered by further consideration of the issue of statutory blindness. Thus, the Court declines to reverse and remand for an award of benefits. Rather, the Court concludes that remand is appropriate so that the record may be further developed and the new evidence considered.

Accordingly, for the reasons discussed above, the decision of the Commissioner will be REVERSED and REMANDED pursuant to sentence four and sentence six of 42 U.S.C. § 405(g) so that the Commissioner can consider the new evidence and conduct additional proceedings consistent with this opinion. A separate judgment will follow.

Done, on this the 27th day of September, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge